# EXHIBIT A

**_EXPLANATION AS TO WHY THE COURT SHOULD REVERSE THE DECISION:_**

1. I am appealing the decision of the EEOC which has adopted the findings of the Division of Human Rights (State of New York) who rendered a determination of "no probable cause" to believe that respondents have engaged in or engaging in the unlawful discriminatory practice complained of. The determination was sent on July 12, 2013 and an appeal to the determination was replied on July 24, 2013 with a confirmation of determination mailed on August 12, 2013 and received by me on August 15 2013.

2. The court should reverse the decision on account of following reasons:

3. On receiving the determination from the Division of Human Rights I sent an appeal letter to the Division of Human Rights(State of New York) explaining the reason for my appeal that the witnesses and evidences given by me were not investigated and taken into account for their determination. (Exhibit) The Division has not contacted any of the witnesses. The Division of Human Rights General Counsel sent a letter dated August 12 2013 that I could file a notice of petition within 60 days of this determination.

4. "Actions taken by an employer that disadvantage an employee for no logical reason *constitute strong evidence of an intent to discriminate*". Smallen v New York Univ. Supreme Court of New York, New York County July 9, 2009; _DeMarco v Holy Cross High School, 4 F3d 166, 171[2d Cir 1993]; see also Stratton v Department for the Aging for City of New York, 132 F3d 869, 879 n6 [2d Cir 1997]_

5. _In Faragher v City of Bocoa Raton (524 U.S. 775,118 S. Ct. 2275, 141 L. Ed. 2d 662 [1998]) and Burlington Indus., Unc. V Ellertq (524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633[1998])_, the U.S Supreme Court held that, in cases in which a hostile work environment has not resulted in a "tangible employment action," such as a demotion, a cut in pay, or a termination, a defendant may raise an affirmative defense "to liability or damages" by showing a preponderance of the evidence."

6. I believe the Division of Human Rights has failed to investigate the actions taken by the employer towards me many times discriminating against me because of age, national origin, color/race, sex and not proceeded to retrieve the documents from the employers Human Resources archive files. That would have revealed and confirmed the evidences, witnesses and information I had provided with the original application and subsequent letters to the division.

7. Please refer to the original complaint that gives evidences and documents of discrimination and harassment towards me in the complaint which is summarize as below :

8. 1. Five final job offers stalled or withered between 2006 and 2010 because of no employment reference or misappropriate reference from Mr. Arthur Fuege(Supervisor) or Ms. Sarah Kurek (HR Manager) which continues till now as is not the practice for other former employees. A third party reference verification agency's report clearly showed HR Manager not providing information on phone or by mail.

9. 2. A discrimination incident when Mr. Arthur Fuege requires me to report to work early during medical

Leave due to stomach surgery. Mr.Arthur Fuege ridiculed in a meeting my phone beep as a heart pacer beep on my return from surgery.

10. 3. I was in a Lower pay and lower job duties compared to other employees performing the similar role.

11. 4. Mr. Arthur Fuege making a remark on national origin that I should have been there in 2004 Tsunami.

12. 5. Mr. Arthur Fuege denied permission to proceed when CIO was interested for a change of role for me.

13. 6. Mr. Arthur Fuege denied interview when a new Guy Carpenter CIO was interested in interviewing me.

14. 7. Mr. Arthur Fuege lowering performance review rating as a result of an alleged misconstrued remark on Mr. Shamith Hamid , not willing to discuss.

15. 8. Mr. Shamith Hamid(Team lead) making a remark that he will send me to the country where I come from.

16. 9. Mr. Shamith Hamid harassing work environment in not allowing to attend invited meetings and threats if did attend the required invited meetings.

17. 10. Mr. Shamith Hamid not providing resources and information as required and denying meeting requests.

18. 11. Ms Sarah Kurek (HR Manager) tried to prevent my unemployment claim to NJ State as stating my resignation was voluntary contradicting the forced termination. NJ State overturned the unemployment claim denial request by Guy Carpenter Human Resources.

19. 12. Under New York law, an employer cannot require a release as a condition to severance the employee is already entitled to receive. Likewise, according to the EEOC, whether a waiver of rights under Title VII, ADA, EPA, OWBPA was "knowing and voluntary?," a valid severance release waiver must be supported by consideration in addition to that to which the employee already is entitled, which was not done in my termination and severance waiver.

20. 13. I was not aware until relatively recently that the severance agreement was unenforceable because there was no additional consideration for it. By requiring me to sign an unenforceable severance agreement, the Guy Carpenter Company misleads me to believe that I had waived my rights. They should be prohibited from benefitting from this deceit and stopped, and the statute of limitations should be equitably tolled similarly to the way it is tolled under the discovery rule and under the continuing violation doctrine.

21. The Division of Human Rights also mistakenly considered the only online verifications with the Work number third party agency done, was by me for non-employment purposes as if I admitted that the Work number third party agency provided verification to the prospective employers. In fact the proof I sent to them clearly showed the verification was done by me for personal use to me and not for prospective employers.

22. The Division of Human Rights did not consider that the respondent employers Marsh McLennan Companies inc./Guy Carpenter LLC HR Manager proofs of evidence in July –September 2007 (Exhibit D – Attachment 2) by a third party employment verification of not providing employment information and reference by phone or mail correspondence. The HR manager did not refer to the Work Number or

mention anything about the Work Number to the third party employment. This points to strong possibilities that my prospective employers when contacted Guy Carpenter for employment verification or reference did not get any information. This should be considered as evidence to the Division point of contention that I failed to proffer evidence to support my claim.

23. During most in-person interviews employment application forms requires information of past employer's supervisor and HR names with telephone contact numbers. And I had provided my respondent employer supervisor (Mr. Arthur Fuege) and HR Manager (Ms. Sarah Kurek) contact telephone numbers in the potential employer application forms and I believe the final offers which were stalled was because of no employment reference from Guy Carpenter LLC.

24. When I was proceeding to seek out employment after coming out from Guy Carpenter in April 2006, Mr. Arthur Fuege and Ms. Sarah Kurek HR with managerial responsibility did not follow the standard employment reference that was provided to other former employees, but refrained from providing to potential employers and misrepresented to me that no one had approached them, which is a discriminatory practice that has resulted in ruining my professional career and void of income for last 7 years.

25. I pray to the judiciary that the Division of Human Rights (State of New York) determination is reversed and that further investigation will prove that Guy Carpenter is liable for the discriminatory practices.